IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CLARUS THERAPEUTICS, INC.,<br><br>                      Plaintiff;<br><br>    v.<br><br>LIPOCINE, INC.,<br><br>                      Defendant. | Civil Action No. 15-1004-RGA-MPT |

MEMORANDUM

The Magistrate Judge issued a Report and Recommendation dated June 23, 2016. (D.I. 22). Defendant filed objections (D.I. 23), to which Plaintiff responded. (D.I. 25).[1] My review of these objections is *de novo*. Fed. R. Civ. P. 72(b)(3).

I. **The Magistrate Judge's Recommendations and Defendant's Objections**

The Magistrate Judge recommended that Defendant's Motion to Dismiss Plaintiff's Declaratory Judgment Complaint (D.I. 7) be denied. (D.I. 22 at 1). Specifically, the Magistrate Judge concluded that the immediacy requirement for declaratory judgment jurisdiction was met because Defendant had undertaken "meaningful preparation" for bringing a product to market. (*Id.* at 9). The Magistrate Judge further concluded that the reality requirement was also met because clinical trials were completed and Defendant's product could "be produced without significant change to its composition or design." (*Id.* at 10). In addition, the Magistrate Judge found that both prongs of the ripeness inquiry were met because no additional fact finding would be necessary to resolve the legal issues presented and because Defendant's "conduct has an

---

[1] Defendant has also filed a Motion for Leave to File Reply in Support of Objections. (D.I. 26). Because Defendant presents additional facts not reasonably available at the time it filed its Objections, Defendant's motion is granted.

immediate and substantial impact on [P]laintiff." (*Id.* at 10-13). The Magistrate Judge also found that the Safe Harbor Provision of the Patent Act did not apply to Defendant because "[D]efendant does not currently hold a patent for its invention." (*Id.* at 13-14). Finally, the Magistrate Judge found that it would be inappropriate for the Court to decline to exercise jurisdiction because the pending Interference proceedings would not resolve the infringement issues raised in this action and because it would be in the interest of justice for this case to proceed. (*Id.* at 14-15).

Defendant first argues that the Magistrate Judge erred in interpreting the Safe Harbor Provision of the Patent Act to require that Defendant hold a patent in order to be entitled to protection under the provision. (D.I. 23 at 10). Second, Defendant argues that the Magistrate Judge erred in concluding that Plaintiff's complaint satisfied both prongs of the ripeness inquiry because FDA approval and product launch are neither imminent nor guaranteed. (*Id.* at 11). Third, Defendant contends that the Magistrate Judge erred in concluding that Plaintiff's complaint satisfied the immediacy and reality requirements for declaratory judgment jurisdiction because any alleged future harm to Plaintiff is speculative and based on future events that may or may not occur. (*Id.* at 12). Fourth, Defendant argues that the Magistrate Judge was incorrect in concluding that the Court should not exercise discretion to decline to hear the case because "judicial economy would be best served" by dismissing the case. (*Id.* at 14).

Plaintiff responds by arguing that the Magistrate Judge was correct in concluding that both prongs of the ripeness inquiry are met. (D.I. 25 at 7). Specifically, Plaintiff argues that the first prong is met because further fact-finding is unnecessary to decide the question of infringement. (*Id.* at 9). Plaintiff argues that the second prong is met because Defendant's product is potentially infringing and "potential liability will increase" as soon as the FDA

approves the product. (*Id.* at 10). In addition, Plaintiff alleges that being forced to seek a preliminary injunction upon FDA approval of Defendant's product would present a significant hardship to Plaintiff. (*Id.*). Plaintiff further argues that the Magistrate Judge was correct in concluding that the requirements for declaratory judgment jurisdiction are met, because Defendant has undertaken meaningful preparation for product launch and because there is no reasonable likelihood that the product's formulation would change prior to launch. (D.I. 25 at 9-10). Notably, Plaintiff does not respond to Defendant's objections to the Magistrate Judge's finding that the Safe Harbor Provision of the Patent Act does not apply to Defendant, but instead argues that Defendant's activities fall outside the scope of protected activities. (*Id.* at 11).

## II. Analysis

### A. The Safe Harbor Provision of the Patent Act

The Safe Harbor Provision of the Patent Act provides protection for potentially infringing activities if those activities are "solely for uses reasonably related to the development and submission of information under a Federal law which regulates the manufacture, use, or sale of drugs or veterinary biological products." 35 U.S.C. § 271(e)(1). The Magistrate Judge found that Defendant "has not conducted any actions that deviate from those reasonably related to the development of its product" in order to seek FDA approval. (D.I. 22 at 13). I agree with the Magistrate Judge and adopt this finding.

Plaintiff argues that Defendant's activities related to market research and preparation for launch are not protected under the Safe Harbor. (D.I. 25 at 12). While this may be true, none of these activities are alleged to constitute present, ongoing infringement. (*See* D.I. 1, ¶¶50, 53). Therefore, the relevance of these activities, if any, is limited to the analysis of whether it is appropriate to exercise jurisdiction over this declaratory judgment action.

3

The Magistrate Judge also found that the Safe Harbor Provision did not apply to Defendant because Defendant does not hold a patent on the invention in question. (D.I. 22 at 13-14). The Safe Harbor Provision, however, does not require that the alleged infringer hold a patent for the invention being infringed.[2] Rather, this provision provides protection for "a competitor who anticipates coming into the marketplace with a product that utilizes a currently patented invention." *Telectronics Pacing Systems, Inc. v. Ventritex, Inc.*, 982 F.2d 1520, 1525 (Fed. Cir. 1992). The Safe Harbor allows competing products to enter the market as soon as the patent term on the invention expires by allowing producers to seek FDA approval prior to expiration of the patent term without infringing the patent. *Id.*

Therefore, the Safe Harbor Provision does apply to Defendant. As the Magistrate Judge found (D.I. 22 at 13), all of Defendant's potentially infringing activities to date fall within the protection of the Safe Harbor. The Magistrate Judge's recommendations with respect to the Safe Harbor Provision of the Patent Act are adopted as modified above.

**B.     Declaratory Judgment Jurisdiction**

The purpose of the Declaratory Judgment Act is "to prevent avoidable damages from being incurred by a person uncertain of his rights and threatened with damage by delayed adjudication." *Minnesota Min. & Mfg. Co. v. Norton Co.*, 929 F.2d 670, 673 (Fed. Cir. 1991). For a court properly to exercise declaratory judgment jurisdiction, there must exist "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). Determining whether immediacy and reality are present is fact

---

[2] The Magistrate Judge relied upon the Safe Harbor Provision's reference to a "*patented* invention" (D.I. 22 at 13 (emphasis in original)), but the plain meaning of that phrase is that it refers not to the alleged infringer holding a patent, but to the patentee holding a patent.

4

specific and must be determined on a case-by-case basis by considering the totality of the circumstances. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). "The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since." *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007).

In order to meet the immediacy prong, "there must be a showing of 'meaningful preparation' for making or using that product." *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 881 (Fed. Cir. 2008) (quoting *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988)). Timing is important for a showing of immediacy. The longer the time between when suit is initiated and when potential infringement may occur, "the more likely the case lacks the requisite immediacy." *Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc.*, 363 F.3d 1361, 1379 (Fed. Cir. 2004). For example, immediacy was not found where an accused infringer's product "would not be finished until at least 9 months after the complaint was filed" and the accused infringer had not engaged in any marketing activities. *Lang v. Pac. Marine & Supply Co.*, 895 F.2d 761, 764 (Fed. Cir. 1990). The Federal Circuit also found immediacy lacking where a potentially infringing product was not "built and operational until about a year after the complaint was filed—a period longer than the nine months determined to be too long in *Lang*." *Sierra Applied Scis., Inc.*, 363 F.3d at 1379.

Here, the Magistrate Judge reasoned that Defendant had engaged in "meaningful preparation for the making, launch, and use of" the accused product. (D.I. 22 at 9). This preparation included "market research, hiring of new sales and marketing personnel, saving for manufacture of commercial quantities of its product, manufacture of launch supplies, and anticipation of the manufacturing agreements." (*Id.*). None of these activities constitute

5

infringement, however. Therefore, on the facts alleged, there is no potential for actionable infringement until after Defendant both achieves FDA approval and enters the market.

Plaintiff filed its complaint on November 2, 2015, over eleven months ago. (D.I. 1). At that time, Plaintiff alleged that the FDA would complete its review of Defendant's NDA in June 2016, over seven months after the filing of the complaint. (*Id.* at ¶41). Plaintiff further alleged that Defendant "expects FDA approval." (*Id.* at ¶42). Plaintiff has not alleged that Defendant has engaged in any marketing of or has solicited any orders for its product.

The allegation that Defendant expects FDA approval is mere speculation, as FDA approval was not guaranteed at the time the complaint was filed. The speculative nature of the statement is reinforced by the fact that the FDA still has not approved Defendant's NDA, months after the expected approval date alleged by Plaintiffs and almost a year after the complaint was filed. (D.I. 23 at 13). In fact, when, and even whether, the FDA will approve Defendant's NDA is still speculative. No amount of market research or hiring of sales personnel can alter the speculative nature of any future infringement. Immediacy was, therefore, lacking at the time the complaint was filed and is still lacking, almost a year later, as there is no indication that either FDA approval or Defendant's entry into the market is imminent. Because the declaratory judgment complaint is based on speculative future events that lack immediacy, the Court does not have jurisdiction to hear this case.

### C. Discretion to Decline to Exercising Jurisdiction

In the alternative, I have discretion to decline to exercise jurisdiction even if the requirements for declaratory judgment jurisdiction were met. For the sake of completeness, although I have concluded that the immediacy requirement is not met, I will address why I would decline to exercise jurisdiction in the alternative.

6

Having found that the court has jurisdiction, the Magistrate Judge concluded that it would be an abuse of discretion to decline to exercise jurisdiction. (D.I. 22 at 14). The Magistrate Judge reasoned that the pending Interference did "not provide grounds for the court to dismiss this action" because the Interference would not determine the infringement issue presented by Plaintiff, but would only determine priority and patentability. (*Id.*). It is true that where an Interference is pending, "the mere chance of the action becoming moot is not reason enough to dismiss" an infringement case. *Minnesota Mining & Mfg. Co.*, 929 F.2d at 674.

In *Minnesota Mining*, for example, the Federal Circuit found that a pending interference was insufficient reason to dismiss an infringement action where the alleged infringer was suffering ongoing business harm. *Id.* at 674-75. The Federal Circuit determined that the district court had abused its discretion because it failed to consider the harm to the plaintiff of a delay in determining the parties' respective rights. *Id.* at 674. The court recognized that the pending Interference could moot the infringement suit, but concluded that "[t]he mere possibility of mootness presented by the interference, in the face of aggressive charges of infringement and possibly accruing damages, is an insufficient reason to decline declaratory judgment jurisdiction." *Id.* at 675-76.

*Minnesota Mining* is distinguishable from this case, however, in that both parties already had products on the market in *Minnesota Mining*. *Id.* at 672. Furthermore, the defendant in *Minnesota Mining* had sent cease and desist letters to the plaintiff's customers threatening legal action. *Id.* Here, neither party has a product on the market. Nor is there any allegation of current infringement or any pending or threatened litigation.

The decision in *Minnesota Mining* rested on the fact that the district court had "failed to consider whether [Defendant's] actions [were] causing [Plaintiff] harm." *Id.* at 674. In this case,

7

unlike in *Minnesota Mining*, there is no ongoing business harm to Plaintiff that would continue to accrue while Plaintiff waits for either the outcome of the Interference or for Defendant to receive FDA approval and actually bring a potentially infringing product to market. In contrast to the real and ongoing threats of harm in *Minnesota Mining*, Plaintiff argues that it would be a hardship to have to seek a preliminary injunction once the FDA approves Defendant's product. (D.I. 14 at 22). Plaintiff further argues that its ability to bring an action for a preliminary injunction would be impeded by Defendant's refusal "to provide . . . discovery in the absence of a court action requiring it to do so." (*Id.*). This argument is unavailing. The potential need to seek an injunction at some time in the future does not alter the immediacy analysis. Furthermore, the alleged impediment to Plaintiff's potential future preliminary injunction action is not actionable harm justifying declaratory judgment jurisdiction over speculative future infringement. There is enough uncertainty about what may happen, and whether Defendant will ever launch the alleged infringing product, so that exercising declaratory judgment jurisdiction, assuming that it exists, is a sufficiently speculative venture that I believe the better exercise of discretion would be to decline to hear this case.

Furthermore, exercising jurisdiction in this case would conflict with the purpose of the Safe Harbor Provision of the Patent Act. The intent of the Safe Harbor is to provide drug manufacturers with protection for activities related to seeking FDA approval. *See Intermedics, Inc. v. Ventritex Co.*, 1993 WL 87405, at *5 (Fed. Cir. 1993). To allow a declaratory judgment action to proceed in a case such as this one where Defendant is not currently infringing, has not engaged in any product marketing, and has not solicited orders, would be to allow Plaintiff to circumvent the Safe Harbor Provision. As the Federal Circuit has stated, "[t]o permit

8

[Defendant] to be protected from direct suit for infringement and yet allow the same activities to be subject to suit in a declaratory judgment action would be nonsensical." *Id.* at *4.

Inasmuch as I will grant the Motion to Dismiss after consideration of the exercise of declaratory judgment jurisdiction, it is unnecessary to consider the issue of ripeness. Therefore, Defendant's Motion to Dismiss is granted and the Magistrate Judge's Report and Recommendation is adopted as modified by this Memorandum.

### III. Conclusion

For the reasons set forth herein, the Report and Recommendation is **ADOPTED as MODIFIED** consistent with this memorandum. Defendant's Motion for Leave to File Reply is **GRANTED**. Defendant's Motion to Dismiss is **GRANTED**.

An appropriate order will be entered.

Entered this 6 day of October, 2016.

Richard G. Andrews
United States District Judge